UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Cheavon Otto,

Plaintiff,

vs.

Premium Blue, Inc.,

Defendant.

## COMPLAINT

Plaintiff, CHEAVON OTTO (hereinafter, "Plaintiff"), by and through undersigned counsel, brings this action against Defendant, PREMIUM BLUE, INC. (hereinafter, "Defendant"), for violations of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, (hereinafter, the "ADA") arising from Defendant's failure to ensure that its e-commerce Website, https://bluejeans.nyc ("Website"), is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff Cheavon Otto is a legally blind resident of Bronx County, New York. Plaintiff suffers from a visual impairment that substantially limits the major life activity of sight.

2. Because of his permanent and irreversible vision loss, Plaintiff relies exclusively on screen-reader software, including VoiceOver, JAWS, and TalkBack, to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, screen-reader software can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, screen-reader software cannot interpret essential content, rendering the site unusable for blind users.

3. Defendant, PREMIUM BLUE, INC., on information and belief, owns, operates, and/or controls the commercial retail website https://bluejeans.nyc ("Website"), which markets and sells goods and/or services to consumers nationwide, including New York. The Website functions as an online retail store and a digital gateway to Defendant's goods and services. Defendant is responsible for ensuring that the Website complies with federal, state, and local accessibility laws.

4. Defendant's Website is not a standalone digital platform; rather it is heavily integrated with, and operates as a service of, Defendant's physical retail location 3542 Broadway, New York, NY 10031 (hereinafter, the "Subject Premises"). The Website functions as a critical gateway through which customers access the goods and services offered at the Subject Premises, including browsing merchandise, obtaining information regarding products offered for sale, locating physical store locations, and making purchases from Defendant's integrated retail operation. The goods, services, privileges, advantages, and accommodations offered through the Website are closely connected to, and facilitate access to, the goods and services offered at the Subject Premises.

5. Defendant's Website is designed to promote and support Defendant's physical retail location by providing customers with information regarding Defendant's merchandise, retail store, and integrated retail operations. The Website serves as a primary means through which customers learn about, access, and purchase Defendant's goods and services, and is directly connected to the Subject Premises. Through the Website, customers may browse products, locate the retail store, and obtain information regarding the goods and services offered by Defendant at the Subject Premises.

6. Plaintiff visited the Website on multiple occasions, including on or about August

6, 2026 with the intent to browse and purchase Defendant's goods and/or services.

7. During each visit, Plaintiff encountered multiple accessibility barriers that prevented him from identifying products, selecting options, adding items to a cart, or completing a purchase. These barriers are systemic and prevent blind and visually impaired individuals from independently accessing and utilizing the Website's goods and services.

8. Defendant's failure to design, maintain, and operate its Website in a manner accessible to blind and visually impaired consumers denies Plaintiff full and equal enjoyment of Defendant's goods, services, and digital content, in violation of federal, state, and city civil rights laws.

9. Plaintiff's intent to return to the Website is concrete, credible, and ongoing. Plaintiff remains interested in purchasing Defendant's goods and/or services once the Website is accessible. Plaintiff relies on online shopping due to his disability and will return immediately once the Website is accessible to blind and visually impaired individuals.

10. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies, and ensure that the Website is fully accessible to blind and visually impaired consumers.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

12. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367 under the New York State Human Rights Law, Article 15 Executive Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") § 296 *et seq.*

13. Venue is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, accessed the Website from this District, and suffered injury here.

14. Defendant conducts substantial business in this District by marketing and selling goods and services through its Website to New York consumers. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content and fulfilling transactions directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

15. Accordingly, jurisdiction and venue are proper because Plaintiff accessed the Website within this District and suffered injury here.

16. Defendant's operation of an interactive Website that is integrated with the Subject Premises in New York constitutes the operation of a place of public accommodation and/or a service thereof within this District. The discriminatory barriers encountered by Plaintiff on the Website are directly connected to Plaintiff's ability to access the goods and services offered at Defendant's physical location, thereby establishing a sufficient nexus between the Website and the Subject Premises.

## THE PARTIES

17. Plaintiff, Cheavon Otto, is a legally blind resident of Bronx County, New York.

Plaintiff relies on screen-reader software to access digital content and complete online transactions and is a qualified individual under the ADA.

18. Defendant, PREMIUM BLUE, INC., is a domestic business corporation that, on information and belief, owns, operates, and controls the Website.

19. Pursuant to New York Department of State Division of Corporations records, Defendant, PREMIUM BLUE, INC., filed the Assumed Name "BLUE JEANS" in 2006.

20. Defendant markets, advertises, and sells its goods and/or services directly to New York consumers through its Website and maintains a highly interactive platform that enables consumers to browse products, review descriptions, select options, and complete purchases. The Website includes detailed product pages that present images, descriptions, specifications, and purchasing information to consumers nationwide. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner that is accessible to individuals who rely on screen-reading technology.

21. Defendant continuously conducts business within this District through its Website by offering goods and services to residents and transmitting digital content to users located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and systematic business activity within this District.

## NATURE OF ACTION

22. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's

failure to design and maintain its Website in a manner that is accessible to blind and visually impaired individuals who rely on screen-reading technology has denied Plaintiff full and equal access to Defendant's goods and services.

23. Defendant's Website is a service of its physical place of public accommodation within the meaning of Title III of the ADA. The Website is not merely informational; rather, it is a fully integrated extension of Defendant's brick-and-mortar operations, through which customers can access, evaluate, and obtain the goods and services offered at the Subject Premises.

24. The inaccessibility of the Website therefore impedes Plaintiff's ability to access the goods and services of Defendant's physical location, including the ability to identify products sold at the Subject Premises, review pricing, and make purchasing decisions prior to visiting or interacting with the physical store.

25. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, researching, and communicating for sighted, blind, and visually impaired individuals alike.

26. Blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

27. Plaintiff is a blind and visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)–(2), its implementing regulations at 28 C.F.R. § 36.101 *et seq.*, and the NYCHRL. Plaintiff relies on screen-reading software to access the Internet.

28. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users cannot access the same content available to sighted users. Screen-reading software translates the visual Internet into an auditory equivalent by reading webpage content aloud at a rapid pace. *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

29. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be clicked, which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

30. Industry-recognized accessibility standards exist to assist businesses in ensuring that websites are accessible to individuals with disabilities. Such standards provide guidance regarding the design and operation of accessible digital content.

**STATEMENT OF FACTS**

31. Plaintiff is a legally blind consumer who relies on screen-reader software to navigate websites, read product information, and complete online transactions.

32. Plaintiff visited the Website on or about August 6, 2026, with the intent to browse and purchase jeans. Plaintiff specifically sought to review and potentially purchase the Polo Ralph Lauren Hampton Straight jeans offered through the Website.

33. Plaintiff desired to independently browse Defendant's selection of jeans, review the appearance and characteristics of the available products, select his preferred size and other options,

and purchase a pair of jeans through the Website.

34. While attempting to browse Defendant's merchandise, Plaintiff encountered accessibility barriers that prevented him from independently identifying and evaluating the jeans he was interested in purchasing. In particular, the product image for the Polo Ralph Lauren Hampton Straight jeans lacked a meaningful description accessible through his screen-reading software, preventing Plaintiff from determining the appearance and characteristics of the jeans depicted.

35. Plaintiff encountered additional accessibility barriers that interfered with his ability to independently locate, evaluate, select, and purchase Defendant's merchandise. Among other things, search suggestions were not announced to his screen reader; product controls did not identify the products to which they applied; size options were not meaningfully identified; and unavailable sizes and colors were not conveyed as sold out. Plaintiff also encountered barriers when adding merchandise to his cart, including the lack of confirmation that an item had been added, an unidentified cart pop-up, cart controls that did not identify the products to which they applied, and quantity changes that were not properly announced. These barriers further impeded Plaintiff's ability to independently select and purchase the jeans he sought.

36. Plaintiff remains interested in purchasing the Polo Ralph Lauren Hampton Straight jeans from Defendant, as well as browsing and purchasing other jeans offered through the Website. Plaintiff strongly desires to return to the Website immediately and going forward to browse Defendant's merchandise and complete a purchase, but has been, and will continue to be, denied equal access unless and until the Website is made accessible to individuals with visual disabilities who use screen-reading software.

37. Plaintiff's ability to access the Website and fully benefit from its goods and services

is hindered by multiple access barriers and noncompliant digital design practices, including but not limited to the following:

**Website Announcements and Media**

**i. Inaccessible Announcement Carousel.**
The Website's announcement region is presented as a carousel with previous and next controls that Plaintiff's screen reader announces merely as "previous button" and "next button," without identifying that the controls operate the announcement carousel. When Plaintiff activates these controls, the announcement content changes visually, but his screen reader does not notify him that the content has changed. Further, after activating the next control, Plaintiff must navigate backward to locate the updated announcement without receiving instructions that the new content appears earlier in the navigation order. As a result, Plaintiff cannot reliably determine that the controls operate a carousel or independently identify and access the updated announcement content.

**ii. Automatically Playing Video Cannot Be Paused.**
The Website's homepage contains a banner video that begins playing automatically without providing controls that permit Plaintiff to stop or pause the video. As a result, Plaintiff cannot independently control the presentation of the automatically playing media while accessing the Website.

**Search**

**iii. Inaccessible Search Suggestions.**
When Plaintiff enters text into the Website's search field, suggested products, search terms, and collections automatically appear, but the suggestions are not announced to his screen reader. The search field also does not provide instructions informing Plaintiff that suggestions will become available or explaining how to access them. As a result, Plaintiff is unaware that search suggestions are available and cannot independently use them to locate Defendant's products.

**Product Browsing and Selection**

**iv. Product Controls Do Not Identify the Associated Products.**
Numerous controls throughout the Website lack sufficient information identifying the products or collections to which they apply. "View more" links on the homepage do not identify the associated product or collection, while product cards contain multiple "Choose options" and "Add to cart" controls that are announced identically without identifying the associated product or available options. Because the Website contains numerous instances of these controls, Plaintiff cannot distinguish them from one another or determine which product or collection each control affects.

**v. Product Size Options Are Not Properly Identified.**
The Website presents size options on certain product pages as radio buttons, but the

controls are not identified to Plaintiff's screen reader as product size selections. Although a "Size" label is visually displayed adjacent to the controls, that label is not associated with the radio buttons or announced to Plaintiff. As a result, Plaintiff cannot determine that the radio buttons permit him to select the size of the product he intends to purchase.

**vi. Unavailable Product Options Are Not Identified.**
The Website visually identifies sold-out size and color options by crossing them out, but equivalent information is not provided to Plaintiff's screen reader. Sold-out options are announced in the same manner as available options and can be selected without any notification that they are unavailable. When Plaintiff selects a sold-out option, the "Add to cart" button visually changes to "Sold Out," but that change is not announced to his screen reader. As a result, Plaintiff cannot independently determine which product sizes or variants are available for purchase.

**vii. More Payment Options Control Does Not Identify Its Function.**
The "More payment options" control on product pages is announced to Plaintiff's screen reader as a same-page link even though activating it adds the product to the order and redirects Plaintiff to the checkout page. As a result, Plaintiff is not informed that activating the control will add merchandise to his order and begin the checkout process and is unexpectedly taken to a different portion of the Website.

**<u>Shopping Cart</u>**

**viii. Plaintiff Is Not Notified When Merchandise Is Added to His Cart.**
When Plaintiff adds a product to the shopping cart, the Website does not provide any announcement or other feedback to his screen reader confirming that the product was successfully added. As a result, Plaintiff cannot independently determine whether his attempt to add merchandise to his cart was successful.

**ix. Shopping Cart Pop-Up Is Not Properly Identified.**
After Plaintiff adds a product to his cart, the Website displays a cart pop-up, but his screen reader does not announce that the pop-up is the shopping cart or explain its purpose. Instead, the next keyboard navigation stop is announced merely as "dialog," without identifying the content contained within it. As a result, Plaintiff cannot determine that he has entered the shopping cart or understand the purpose of the displayed dialog.

**x. Shopping Cart Controls Do Not Identify the Associated Products.**
The quantity and remove-item controls within the shopping cart do not identify the products to which they apply. When multiple products are in Plaintiff's cart, the decrease quantity, quantity, increase quantity, and remove controls for each item are announced in substantially identical terms without identifying the associated product. As a result, Plaintiff cannot independently determine which product will be affected when he changes a quantity or removes an item from his cart.

**xi. Shopping Cart Quantity Changes Are Not Properly Announced.**
When Plaintiff uses the increase or decrease quantity controls within the shopping cart, his

screen reader does not provide feedback confirming that the quantity was changed or announce the new quantity or updated cart total. In some instances, the Website instead provides unrelated announcements, such as "Add to cart button," that do not correspond with Plaintiff's location or the action he performed. As a result, Plaintiff cannot independently confirm that his requested quantity change was successful, determine the new quantity or cart total, or reliably understand the result of his interaction with the cart.

38. As a direct result of these barriers, Plaintiff was unable to identify products, select options, add items to a cart, and complete a purchase. His exclusion was real, immediate, and directly caused by Defendant's failure to implement basic, industry-standard accessibility practices on the very pages offering the goods and/or services she needed.

39. Defendant's Website is directly integrated with its physical location and serves as a primary means by which customers access the goods and services offered at the Subject Premises. Through the Website, Defendant provides detailed product listings, descriptions, pricing, and promotional information for products offered through Defendant's integrated retail operation, and enables customers to identify, evaluate, and select merchandise prior to visiting the Subject Premises.

40. Plaintiff's attempts to access the Website were made in connection with his intent to obtain goods and/or services from Defendant's physical location. Plaintiff sought to use the Website to identify suitable products, review available options, and facilitate a transaction tied to Defendant's brick-and-mortar operations.

41. The accessibility barriers encountered by Plaintiff on the Website prevented his from accessing critical information necessary to utilize the goods and services offered at the Subject Premises, including the ability to identify products sold at Defendant's physical location(s), confirm available options, and make informed purchasing decisions.

42. As a result of these barriers, Plaintiff was effectively denied access not only to the

Website, but also to the goods and services of the Subject Premises, as the Website functions as a gateway to those goods and services.

43. Defendant's Website is not a passive marketing tool; it is a fully interactive platform central to its business model. Through the Website, Defendant markets and sells goods and services nationwide, including to New York residents.

44. Defendant has failed to implement readily available accessibility measures necessary to ensure that blind and visually impaired individuals can access and utilize the Website.

45. Plaintiff's intent to return to the Website is concrete and ongoing. Plaintiff remains interested in purchasing Defendant's goods and/or services once the Website is accessible.

46. Plaintiff's need for accessible online shopping is permanent and ongoing due to his disability.

47. Defendant's failure to make the Website accessible denies Plaintiff full and equal enjoyment of its goods and services.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

48. Plaintiff restates Paragraphs 1-47 as though fully set forth herein.

49. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

50. Defendant owns, leases, or operates a place of public accommodation.

51. Defendant's Website is a service of a place of public accommodation and is heavily

integrated with Defendant's physical location. Accordingly, the Website must be accessible to blind and visually impaired individuals on equal terms.

52. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

53. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

- A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and
- A failure to take such steps may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

54. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight

within the meaning of 42 U.S.C. §§ 12102(1)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing.

55. Defendant has denied Plaintiff full and equal access to its goods and services.

56. Defendant has failed to provide auxiliary aids and services necessary for accessibility.

57. Defendant's conduct violates the ADA.

58. Plaintiff is entitled to injunctive relief.

**SECOND CAUSE OF ACTION**
**(Violation of NYSHRL)**

59. Plaintiff restates Paragraphs 1-47 as though fully set forth herein.

60. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law § 290 *et seq.*, covers the actions of the Defendant.

61. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

62. Defendant, at all relevant times to this action, owns and operates a place of public accommodation, the subject Website within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

63. Plaintiff has visited the Website on multiple occasions and has encountered accessibility barriers that deny his full and equal access.

64. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

65. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

66. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

67. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that

taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

68. Established accessibility standards and testing methodologies exist to assist businesses in providing accessible websites for individuals with disabilities. Defendant failed to implement such accessibility measures despite the widespread availability of accessibility guidance and tools.

69. Defendant has intentionally and willfully discriminated against the Plaintiff in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

70. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff, causing irreparable harm.

71. Plaintiff is therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**<u>THIRD CAUSE OF ACTION</u>**
**(Violation of NYCHRL)**

72. Plaintiff restates Paragraphs 1-47 as though fully set forth herein.

73. N.Y.C. Administrative Code ("NYCHRL") § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of any person's . . . disability . . . directly or indirectly to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of

public accommodation."

74. Defendant is subject to NYCHRL because it owns and operates the Website making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

75. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therewith to be inaccessible to blind individuals. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

76. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of § 8-107 *et seq.* from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

77. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

78. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

79. Defendant's actions violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

80. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

81. Plaintiff is also entitled to reasonable attorneys' fees and costs.

82. Under N.Y.C. Administrative Code §§ 8-120 and 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff seeks judgment as set forth below.

**FOURTH CAUSE OF ACTION**
**(Declaratory Relief)**

83. Plaintiff restates Paragraphs 1-47 as though fully set forth herein.

84. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

85. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

1. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

2. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully accessible to blind and visually impaired individuals;

3. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

4. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff for violations of civil rights under New York City Human Rights Law and the New York State Human Rights Law;

5. Pre-judgment and post-judgment interest;

6. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

7. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Jennifer E. Tucek, Esq.*
Law Office of Jennifer Tucek, PC
Bar No. JT2817
641 Lexington Avenue, 15th Floor
New York, New York 10017
(917) 669-6991
TucekLaw@Gmail.com
*Attorney for Plaintiff*